UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

IN RE:

RUSSEL D. BLACK, JR. and Case No. 09-78266-wsd
DEBRA M. BLACK, Chapter 7

 Debtors. Hon. Walter Shapero
_____/

**OPINION REGARDING DEBTORS' MOTION TO HOLD IRON WORKERS' LOCAL 25 PENSION FUND IN CONTEMPT FOR VIOLATING 11 U.S.C. § 524**

INTRODUCTION

Debtors filed this joint chapter 7 bankruptcy on December 16, 2009. They were granted a discharge of eligible debts on March 30, 2010. Creditor Iron Workers' Local 25 Pension Fund ("the Pension Fund" or "Fund"), through an assignment, became the holder of a mortgage debt on Debtors' primary residence. As additional security for this debt, Mr. Black granted the Fund a lien on a 50% interest ("the Pension Assignment") in his own Iron Workers' Local 25 pension. After the bankruptcy discharge, the Pension Fund judicially foreclosed the mortgage, bid in at the sale, and later sold the property. In order to recoup the resultant deficiency, the Fund began withholding 50% of Mr. Black's monthly pension payments ("the Pension Benefits") pursuant to the Pension Assignment. Debtors successfully moved to reopen this case on September 3, 2013. Debtors then filed this Motion to Hold Iron Workers' Local 25 Pension Fund in Contempt, which the Court heard on an expedited basis. For the following reasons, Debtors' motion is denied.

1

**FACTUAL BACKGROUND**

On December 12, 2013, the Court entered a stipulated Order containing the undisputed facts and exhibits to be admitted into evidence. (Order Regarding Facts and Exs., Dec. 6, 2013, ECF No. 54).[1] The Court incorporates the following as its findings of fact: Debtors purchased certain real property located at 4154 Harris Rd., Lakeport, Michigan 48059 ("the residence"). (Stip. F.– B). On or about December 26, 2001, Debtors executed and delivered a promissory note to AAA Mortgage Corporation in the principal sum of $200,000. (Stip. F.– E). Debtors granted AAA Mortgage a mortgage in the amount of $200,000. (Stip. F.– F). On or about May 9, 2003, Russel Black executed the Pension Assignment, whereby he assigned a 50% interest in his Iron Workers' Local 25 Pension Benefits to the Pension Fund to serve as security in the event that it became necessary to foreclose on the mortgage and the proceeds of the mortgage sale were insufficient to satisfy any unpaid balance, accrued interest, costs (including legal fees), and penalties owed. (Stip. F.– H); (Ex. E).

Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 16, 2009. Debtors did not reaffirm any of the debts associated with the residence. (Stip. F.– L). The Debtors received a discharge under 11 U.S.C. § 727 on March 30, 2010. (Ex. J). Chapter 7 Trustee Homer W. McClarty filed his Report of No Distribution on January 28, 2010. (Stip. F.– O). On or about October 25, 2011, the Pension Fund commenced an action for Judicial Foreclosure in the St. Clair County Circuit Court with respect to the mortgaged residence. (Stip. F.– R). A Default Judgment of Foreclosure ("the state court foreclosure judgment") was entered by the Honorable Judge Daniel J. Kelly on or about April 30, 2012. (Stip. F.– T). The Judgment stated that "the entire unpaid balance of the mortgage debt has been accelerated and is due and payable, in the amount of $242,917.94, as of April 30, 2012, with

---

[1] Stipulated facts hereinafter referred to as "Stip. F.– [ ]."

interest accruing at a contractual rate of 5.5%." (Ex. P, at 2). The Judgment also contained the following language:

> **IT IS FURTHER ORDERED** that no provision of this Judgment shall entitle Plaintiff to collect any personal debt obligation that was owed by Russel D. Black, Jr. . . . , prior to the Russel D. Black, Jr. . . . bankruptcy filing.
> **IT IS FURTHER ORDERED** that if proceeds from the sale are not sufficient to pay the debt in full, that Plaintiff shall not be entitled to a deficiency judgment against defendants Russel D. Black, Jr. . . . and Debra M. Black . . . .

*Id.* at 4 (emphasis original).

A judicial foreclosure sale took place on July 5, 2012, and the Pension Fund credit bid $247,022.07, which was the full amount of outstanding debt. (Stip. F.–Y).[2] The Pension Fund then sold the property to a third party on or about June 20, 2013, for $119,900. (Stip. F.– AA). On July 16, 2013, the Pension Fund wrote Russel Black and notified him that the Pension Fund had decided to exercise its rights under the Pension Assignment and that his Pension Benefits would be reduced by $1,117.46 per month for the remainder of his life, to satisfy his remaining debt in the total amount of $154,604.47 on the foreclosed Mortgage. (Stip. F.– CC). This set off or reduction began with Mr. Black's pension payment on August 1, 2013. *Id.* Debtors reopened their bankruptcy case in order to file this Motion for Contempt on September 5, 2013. A hearing on this motion was held on September 12, 2013. On September 20, 2013, the Court entered a stipulated order barring the Pension Fund from withholding any further Pension Benefits from Mr. Black until such time that the Debtors' Contempt Motion was decided. (Stip. Order, Sept. 20, 2013, ECF No. 43) ("the Withholding Order").

### STATEMENT OF JURISDICTION

The Court has jurisdiction over Debtors' Motion for Sanctions pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O) as it relates to the

---

[2] This total amount bid represented $201,065.26 of outstanding principal debt, $33,296.99 of accrued interest, $6,992.14 of advanced escrow, and $5,483.72 in fees and other charges. (Stip. F.–OO).

liquidation of assets of the estate in addition to an action under title 11 for a possible violation of the discharge injunction. *In re Johnson*, 439 B.R. 416, 420 (Bankr. E.D. Mich. 2010) *aff'd on other grounds*, 10-14292, 2011 WL 1983339 (E.D. Mich. May 23, 2011) (citing *Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009)).

## ISSUE PRESENTED

The sole issue presented to this Court is whether the Pension Fund violated the bankruptcy discharge injunction of § 524(a)(2) by setting off the foreclosure deficiency debt against Mr. Black's Pension Benefits pursuant to the Pension Assignment.

## DISCUSSION

Debtors claim that this set off violates the discharge injunction of § 524, as an attempt to collect on a discharged debt. The Pension Fund raises three defenses: (1) that the Court lacks jurisdiction to rule upon the alleged offenses, (2) that the Pension Fund's loan to the Debtors was a qualifying ERISA § 408(b)(1) transaction and therefore the resulting debt is non-dischargeable under § 523(a)(18); and (3) that the language of the assignment makes it enforceable notwithstanding the state court order.

Section 524 of the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). In order to establish a violation of this discharge injunction, Debtors must prove by clear and convincing evidence: (1) that they received a discharge of the debt at issue, (2) that the creditor had notice of the discharge, and (3) that the creditor intended the acts that violated the discharge injunction. *In re Holley*, 473 B.R. 212, 215 (Bankr. E.D. Mich. 2012) *aff'd,* 12-13088, 2013 WL 791549 (E.D. Mich. Mar. 4, 2013); *see In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008).

## I. The Pension Fund's Interests in Debtors' Property Post-Discharge

To succeed on their motion, Debtors must first prove that the Pension Fund has attempted to collect on a discharged debt—i.e. a personal liability of the Debtors. 11 U.S.C. § 524(a)(2). The Supreme Court has instructed that "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). Actions against a debtor *in rem* do not violate the discharge injunction. "Chapter 7 bankruptcy discharge does not, in and of itself, discharge a creditor's lien. And actions that merely seek to enforce a creditor's surviving lien are not considered to be actions to collect a debt 'as a personal liability of the debtor' within the meaning of the § 524(a)(2) discharge injunction." *In re Johnson*, 439 B.R. 416, 428 (Bankr. E.D. Mich. 2010) (citing 11 U.S.C. § 524(a)(2)). Thus, if the Pension Fund withheld the Pension Benefits to set off against a discharged personal liability of the Debtors then it has violated the discharge injunction. On the other hand, if it merely pursued action against the Debtors *in rem* pursuant to a valid lien then it has not violated the discharge injunction. To make this determination, the Court must first decide what interest the Pension Fund had in Debtors' property and how this interest was affected by the discharge.

### A. *The Pension Fund's Mortgage Was Not Affected by the Bankruptcy Discharge*

There is no dispute that the Pension Fund had a valid mortgage securing Debtors' residence. It is well established that a mortgagee's secured interest in property rides through bankruptcy unaffected. *See Johnson*, 501 U.S. at 111 ("Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property."). Once the Court granted Debtors' discharge, the Pension Fund was free to foreclose upon the mortgage uninhibited by the automatic stay or the discharge injunction. *See* 11 U.S.C. § 362(c)(2)(C).

### B. *The Pension Fund's Lien on Debtors' Pension Benefits Rode Through Bankruptcy*

The Bankruptcy Code defines a "lien" as any "charge or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). A security interest, otherwise known as a consensual lien, is defined as a "lien created by agreement." 11 U.S.C. § 101(51). Pursuant to Michigan's Uniform Commercial Code, a security interest is created when (1) value is given, (2) the grantor of the lien has rights in the collateral, and (3) the parties sign a security agreement describing the collateral. *See* Mich. Comp. Laws § 440.9203(2). The language of the Pension Assignment states:

> I understand that if, in the event of default (failure to pay) by me or my spouse or both of us, the mortgage note *for which this assignment is intended as security*, it should be necessary for the mortgagee, Iron Workers Local 25 Pension Fund, to foreclose on the mortgage *secured by promissory note and this assignment*, and should the proceeds of the mortgage sale be insufficient to satisfy any unpaid balance thereon, accrued interests, costs (including legal fees) and/or penalties, the Iron Workers Local 25 Pension Fund *shall be entitled to reimburse from pension benefits* to which I and my spouse might otherwise have been entitled, to recover its entire loss, including said unpaid balance, accrued interest, costs (including legal fees) and penalties.

(Ex. E) (emphasis added). When this Assignment was signed, the Pension Fund had provided value in the form of loan proceeds and the Debtors had rights in the pension; thus all elements of Mich. Comp. Laws § 440.9203(2) were met. Further, Debtors have not raised any argument questioning the validity of this lien. Therefore, the Court finds that by the time Debtors filed bankruptcy, the Pension Fund had attached a valid lien to Mr. Black's pension.

Next, the court must determine if the bankruptcy had any effect on this lien. On their bankruptcy petition, Debtors listed Mr. Black's Iron Workers' Local 25 pension on Schedule C and claimed it as 100% exempt.[3] (Bankr. Pet. 12, ECF No. 1). Neither the trustee, nor any party in interest, objected to this claimed exemption. Debtors cited §§ 522(d) and 541(c)(2) as the

---

[3] The value of the pension was also listed as $1.00, despite providing Debtors "$991.45 per month." (Bankr. Pet. 12, ECF No. 1).

Code provisions that allow this exemption; however, these sections implicate two functionally different methods of protecting assets in bankruptcy. *Id.* The former allows a debtor to claim an exemption of estate property, whereas the latter excludes property from the estate altogether. *See* 11 U.S.C. §§ 522(d), 541(c)(2). Mr. Black's pension was only excluded from the estate if it was in a trust that restricted the transfer of its beneficial interest enforceable under nonbankruptcy law. 11 U.S.C. § 541(c)(2). The Employee Retirement Income Security Act (ERISA) is such applicable nonbankruptcy law that has the effect of excluding qualifying pension plans from the bankruptcy estate under § 541(c)(2).[4] *Patterson v. Shumate*, 504 U.S. 753, 760 (1992). Though the issue of whether Mr. Black's pension qualifies under ERISA was only discussed tangentially,[5] it is ultimately immaterial as the Pension Fund's secured rights were unchanged whether the pension was fully exempt or excluded from the estate.

If Mr. Black's pension was an ERISA-qualifying plan and was excluded from the bankruptcy estate, the Pension Fund's lien was likewise excluded from, and unaffected by, the Debtors' bankruptcy. *See In re Herndon*, 289 B.R. 629, 632 (Bankr. E.D. Mich. 2003) (holding that the bankruptcy stay did not prevent a pension fund from setting off against a debtor's ERISA pension to satisfy a loan made from the plan); s*ee also U.S. I.R.S. v. Snyder*, 343 F.3d 1171, 1179 (9th Cir. 2003) ("[a]though exclusion . . . precludes the IRS from attaining secured status in the bankruptcy proceeding, the IRS's liens against [the debtor's] interest are not extinguished or otherwise affected. The liens continue to exist, but outside of bankruptcy."). On the other hand, even if the pension was not an ERISA-qualifying plan and became fully exempt property of the

---

[4] However, "a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued non-forfeitable benefit and is exempt from the tax imposed by section 4975 of Title 26." 29 U.S.C. § 1056(d)(2). The Pension Fund's assertion that this loan qualifies under § 408(b)(1) of ERISA would necessarily mean that this anti-alienation exception also applies. *Compare* 29 U.S.C. § 1108(b)(1) *with* 26 U.S.C. § 4975(d)(1). Thus, the lien on Mr. Black granted on his pension would not run afoul of the anti-alienation provision of ERISA.

[5] The Pension Fund argued that the loan was made out of an ERISA § 408(b)(1) plan for the purpose of asserting § 523(a)(18) non-dischargeability, but neither party addressed this argument with any level of detail.

7

estate, the Pension Fund's lien also rode through bankruptcy unaffected. "Chapter 7 bankruptcy discharge does not, in and of itself, discharge a creditor's lien." *In re Johnson*, 439 B.R. at 428. Moreover, the trustee took no action during the pendency of the bankruptcy case to invalidate the lien. Even assuming the lien impairs fully exempt property, it is a consensual lien that cannot be avoided by § 522(f)(1)—it is not a judicial lien or a "nonpossessory, nonpurchase-money security interest" in one of the enumerated household goods.[6] 11 U.S.C. § 522(f)(1). Thus, regardless of whether Mr. Black's pension was fully exempt or excluded from the estate, the Pension Fund's lien on the pension survived the bankruptcy discharge and validly and timely attached.

## II. The Pension Fund's Enforcement of the Deficiency Judgment

When the Court granted the Debtors' discharge, it absolved them of any personal liability to the Pension Fund for the mortgage debt. However, the liens on the Debtors' residence and pension survived, and provided the Pension Fund a post-discharge remedy to recover the debt through the value of its collateral in an action *in rem*. The bankruptcy discharge injunction did not bar the Pension Fund from attempting to collect on a deficiency that may have resulted from a later foreclosure—it only prevented the Fund from enforcing a deficiency *as a personal liability* of the Debtors. *See* 11 U.S.C. § 524(a)(2). Withholding the Pension Benefits was an action *in rem* against the Debtors' property, not *in personam*. *See* 11 U.S.C. § 553. Therefore, the Pension Fund did not violate the discharge injunction.

---

[6] This section only applies to the following goods:

(i) Household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(ii) Implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(iii) Professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C. § 522(f)(1)(B).

The set off may have run afoul of the state court foreclosure judgment, which prohibited the Pension Fund from collecting any deficiency judgment that may have resulted from the sale. As noted, the state court foreclosure judgment stated:

> **IT IS FURTHER ORDERED** that if proceeds from the sale are not sufficient to pay the debt in full, that Plaintiff shall not be entitled to a deficiency judgment against defendants Russel D. Black, Jr. . . . and Debra M. Black . . . .

(Ex. P, at 2) (emphasis original). It may also be worth additionally recalling that this judgment was a default judgment and thus its wording was likely proposed and presented by the attorneys for the Pension Fund itself. Presumably, this language reflects the mandate of M.C.L. 600.3150 which provides that "[i]n the original judgment in foreclosure cases the court shall determine and adjudge which defendants, if any, are personally liable on the land contract or for the mortgage debt." Mich. Comp. Laws Ann. § 600.3150. Under Michigan law it would appear that no deficiency judgment can arise if (as happened here) a mortgagee credit bids the full outstanding indebtedness at the sheriff's sale. *In re Miller*, 459 B.R. 657, 673 (B.A.P. 6th Cir. 2011) *aff'd*, 513 F. App'x 566 (6th Cir. 2013) (applying Michigan law); *see e.g. Pulleyblank v. Cape*, 446 N.W.2d 345, 347 (1989) (explaining that the mortgagee "receives" the amount it credit bids at a foreclosure sale; thus a full credit bid extinguishes the entire indebtedness).

However, the foregoing possible violation of Michigan foreclosure law and/or the terms of the state court foreclosure judgment do not establish a violation of the bankruptcy discharge injunction. The two require separate and independent analyses, which Debtors seem to have conflated. In their complaint they argue that "[t]he *Judgment* expressly barred the Pension Fund from having any deficiency claim against the Debtors and further prohibited the Pension Fund from collecting on any pre-bankruptcy claims." (Compl. ¶ 28) (emphasis added) (referring to the language of the state court foreclosure judgment). Even if the Pension Fund did violate the state court foreclosure judgment, this has no bearing on whether it also violated the bankruptcy

9

discharge injunction. While it appears that arguably Debtors have a cause of action against the Pension Fund for violating that judgment and/or Michigan law, essentially because the Pension Fund's actions relate to its rights under state law with respect to its collateral, this Court can and should only adjudicate this controversy as it relates to the bankruptcy discharge injunction. The Pension Fund's possible violations of Michigan law or the state court foreclosure judgment do not arise under title 11 nor do they affect the Debtors' estate. *See* 28 U.S.C. § 157(b)–(c); *see also In re Perry*, 388 B.R. at 338 (holding that bankruptcy court does not have jurisdiction over post-judgment disputes that do not affect the debtor's estate).

### CONCLUSION

The Court therefore finds that the Pension Fund did not "collect, recover or offset any such debt *as a personal liability the debtor*[*s*]" by withholding Mr. Black's monthly Pension Benefits. 11 U.S.C. § 524(a)(2) (emphasis added). However, this disposition should not be construed to prejudice or impair Debtors' rights to further pursue other legal causes of action arising out of these same facts in state court against the Pension Fund (on which this Court has commented, but is not ruling). Moreover, in order to provide Debtors the opportunity to pursue any such claims further without the hardship imposed by the Fund's set off, the Court is extending the Withholding Order entered September 20, 2013 [ECF No. 43] for 90 days from the date of entry of this opinion, subject to an extension thereof for cause, moved for prior to the expiration of that period.

Debtors' Motion to Hold the Pension Fund in Contempt is denied. The Pension Fund should present an order consistent with this opinion.

.

**Signed on February 14, 2014**

                                         **/s/ Walter Shapero**
                                       **Walter Shapero**
                                       **United States Bankruptcy Judge**